**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Trustees of the North Atlantic States Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds,<br><br>                                   Petitioners,<br><br>                        -v-<br><br>Dame Contracting, Inc.,<br><br>                                   Respondent. | 2:23-cv-05254<br>(NJC) (JMW) |

<u>**MEMORANDUM AND ORDER**</u>

NUSRAT J. CHOUDHURY, District Judge:

Petitioners Trustees of the North Atlantic States Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds (the "Trustees") have filed a Petition to confirm an arbitration award requiring Respondent Dame Contracting ("Respondent" or "Dame") to pay contributions, fees, and interest that it owes to various employee fringe benefit funds administered by the Trustees pursuant to the terms of collective bargaining agreements that govern their relationship. (Pet., ECF No. 1.) Dame has not appeared in this action or otherwise opposed the Petition and its time to do so has expired. (*See* Clerk's Entry of Default, ECF No. 12.) Before this Court is the Petition and the Trustees' Motion for Default Judgment and supporting submissions. (ECF Nos. 1, 13–18, 20.) For the reasons set forth below, the Court construes the Petition and Motion for Default Judgment together as an unopposed motion for summary judgment and confirms the arbitration award.

## BACKGROUND

### I.     Petition and Arbitration Below

The following facts are derived from the Petition, the Trustees' Memorandum of Law in

Support of the Petition ("Pet. Mem.," ECF No. 4), and the submissions filed in support of the

Trustees' Motion for Default Judgment, including: a Memorandum of Law ("Mot. Mem.," ECF

No. 17); the Declaration of William Banfield, a member of the Executive Committee of the

North Atlantic States Regional Council of Carpenters (the "Union") ("Banfield Decl.," ECF No.

14); the Declaration of Kim Tompuri, the contributions managers for the Trustees ("Tompuri

Decl.," ECF No. 15); the Declaration of Maura Moosnick, Esq., the Trustees' counsel

("Moosnick Decl.," ECF No. 16); and the Supplemental Declaration of Kim Tompuri ("Tompuri

Supp. Decl.," ECF No. 20-1).

### A.  The Parties

Petitioners are trustees of numerous fringe benefit funds organized in accordance with

federal employment and labor laws. Petitioner Trustees of the North Atlantic States Carpenters

Health, Pension, Annuity, and Apprenticeship Funds (collectively, "ERISA Funds") are

employer and employee trustees of multiemployer labor-management trust funds organized and

operated in accordance with the Employee Retirement Income Security Act ("ERISA") of 1974,

29 U.S.C. §§ 1002 *et seq.* (Tompuri Decl. ¶ 3; Tompuri Supp. Decl. ¶¶ 3, 5.) Petitioner Trustees

of the North Atlantic States Carpenters Labor Management Cooperation Fund (the "Labor

Management Fund") are employer and employee trustees of a labor management cooperation

committee established under Section 302(c)(9) of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 186(d)(9). (Tompuri Decl. ¶ 4.) The ERISA Funds and the Labor

Management Fund are together referred to as "the Funds" in the Arbitration Award at issue in

this case and in this Memorandum and Opinion. (Collection Award & Order ("Award") at 1–2, Pet. Ex. F, ECF No. 1-6; Tompuri Supp Decl. ¶ 5.)

Dame is a New York corporation. (Pet. ¶ 7; Tompuri Decl. ¶ 5.) For all relevant time periods, Dame was a member of the Association of Wall-Ceiling & Carpentry Industries of New York, Inc. ("Carpentry Association") (Pet. ¶ 10; Member List, Pet. Ex. A, ECF No. 1-1). The Carpentry Association is the bargaining representative of its employer-members. (Pet. ¶ 11; Banfield Decl. ¶ 5; *see also* Pet., Ex. B ("CBA") at 3, ECF No. 1-2.) Accordingly, members of the Carpentry Association agree to be bound to all collective bargaining agreements to which the Carpentry Association is a party. (Pet. ¶ 11; Banfield Decl. ¶ 5; *see also* Pet., Ex. B ("CBA") at 3, ECF No. 1-2.)

B. Collective Bargaining Agreement with the North Atlantic States Regional Council of Carpenters (the "Carpenters' Union")

The Carpentry Association, on behalf of its employer-members, entered into a collective bargaining agreement ("the CBA") with the North Atlantic States Regional Council of Carpenters (the "Carpenters' Union"). (*See* Banfield Decl. ¶ 3; *see also* CBA, Pet. Ex. B, ECF No. 1-2.) This CBA covers the period from May 1, 2022 through April 30, 2025 and requires that employers make certain regular fringe benefit contributions to each of the Funds for all work within the trade and geographical jurisdiction of the Carpenter's Union. (Pet. ¶ 11; Banfield Decl. ¶¶ 5–6; CBA art. 16.) The CBA provides that, if an employer fails to make these required contributions "by the end of the following payroll week in which the hours are worked," the employer shall be "liable for all contributions due, all collection costs including auditing and attorney fees, 20% of total due each Fund as liquidated damages, plus interest." (CBA art. 16(b).)

C.  Collective Bargaining Agreement with United Brotherhood of Carpenters and Joiners of America

Dame also entered into a collective bargaining agreement with United Brotherhood of Carpenters and Joiners of America ("UBC" and "UBC Agreement") which became effective on August 10, 2010. (Pet. ¶¶ 12–13; *see also* UBC Agreement, Pet. Ex. C, ECF No. 1-3.) The UBC Agreement provided that the agreement would "automatically renew itself for subsequent three-year periods unless written notice to terminate is given by either party" at specified time periods. (UBC Agreement art. VIII.) Under the UBC Agreement, "[p]ayment of annuity, pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement for that locality . . . ." (UBC Agreement art. II.) The relevant collective bargaining agreement for the locality in which Dame performed work was the CBA. (Pet. ¶ 15; CBA at 1–2.)

D.  The Funds' Collection Policy

Under the CBA, employers "shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." (CBA art. 16(a).) The Trustees of the Funds established a policy to govern the collection of all employer contributions ("Collection Policy"). (Pet. ¶ 19; Collection Policy, Pet. Ex. D, ECF No. 1-4; Tompuri Decl. ¶ 10.) The Collection Policy requires employers participating in the Funds to submit to an audit of records upon request. (Pet. ¶ 21; *see also* Collection Policy art. IV.) The Collection Policy further provides that interest on an employer's delinquent contributions to the ERISA Funds is to be calculated at the "minimum rate of .75% per month," and that liquidated damages "shall be calculated" from the date the contributions are due under the CBA, "shall become due and owing if suit is commenced," and "shall be 20% of the delinquent [c]ontributions." (Collection Policy

4

art. II, § 2.1.D; *id.* art. VI, § 6.1; *see also* Tompuri Decl. ¶ 13.) Under the Collection Policy, an employer delinquent in its contributions to the Funds shall be liable for all costs incurred in collecting delinquent contributions, including attorney's fees "at the hourly rate charged to the Fund for all time spent by Counsel in collection [and audit] efforts" as well as audit costs and arbitration fees. (Collection Policy art. VI, §§ 6.2–6.3.) Further, where an employer fails to pay its required contributions to the Funds, the Collection Policy requires that the matter be sent to arbitration before an arbitrator designated by the Funds, unless counsel for the delinquent employer files suit in Federal Court. (*Id.* art. II, § 2.3; Tompuri Decl. ¶ 12.)

      E.   <u>Arbitration Hearing</u>

From November 6, 2022 through February 12, 2023, Dame did not remit $38,951.82 in benefit contributions to the Funds, as was required under the CBA. (Pet. ¶ 25.) To collect these unpaid contributions, the Trustees initiated arbitration pursuant to the Collection Policy before the Funds' designated arbitrator, J.J. Pierson. (*Id.* ¶ 26.) The Arbitrator held a hearing on April 26, 2023, and although notice of the hearing was provided to all parties, Dame did not appear. (Award at 1.) On May 10, 2023, the Arbitrator issued the Award, finding that Dame was "delinquent in payment of fringe benefit contributions to the Funds, in violation of its obligations under the [CBA] for the payroll periods of November 6, 2022 through February 12, 2023 in the amount of $38,951.82." (Award at 2.) The term "Funds" as used in the Award includes all of the ERISA Funds and the Labor Management Fund. (Tompuri Supp. Decl. ¶ 5.) Accordingly, the Arbitrator ordered that Dame pay the Funds those outstanding contributions as well as:

> interest in the amount of $809.61, interest on previous late payments in the amount of $3,569.28, and liquidated damages in the amount of $7,790.36[,] . . . reasonable attorneys' fees incurrent by the Funds in this matter in the amount of $950.00 plus interest at the rate of 10% of the date of this Award on any part of the attorneys' fees awarded and ordered that is not paid within 30 days of the date of this Award[,] . . . [and] the Arbitrator's fee of $800.00.

(*Id.* ¶¶ 1–3.) In total, the Arbitrator ordered Dame to pay the Funds $52,871.07. (*Id.* ¶ 4.) The Arbitrator further ordered that in the event that Dame fails to pay the Award and Petitioners seek to enforce the Award in court, Dame shall be responsible for "all court costs including, but not limited to, the filing fee of $400.00." (*Id.* ¶ 9.)

Petitioner served Dame with the Arbitrator's Award on May 16, 2023. (Pet. ¶ 29; Pet'rs' Demand Ltr., Pet. Ex. G, ECF No. 1-7.) On July 19, 2023, Dame paid $8,451.81 toward the $38,951.82 in unpaid contributions identified as due in the Award. (Tompuri Supp. Decl. ¶ 6.) On March 11, 2024, Dame paid $30,500.01 toward the remaining unpaid contributions identified as due in the Award. (*Id.* ¶ 7.) Accordingly, Dame has paid a total of $38,951.82 toward the Award, which is the total amount of the contributions Dame failed to pay the Funds between November 6, 2022 and February 12, 2023, the recovery of which the Funds pursued through arbitration. (*Id.* ¶¶ 6–7; Award at 2.) As of the date of writing, Dame has not complied, however, with the remainder of the Award, namely to pay the Funds "interest (on principal amounts due, and that accrued prior to the issuance of the Award) in the amount of $809.61, prior late payment interest of 3,569.28, liquidated damages in the amount of $7,790.36, attorneys' fees of $950 plus interest of 10% thereon, and arbitrators' fee of $800." (Tompuri Supp. Decl. ¶ 8; *accord* Award at 1–3.)

## II.    Procedural History

On July 10, 2023, the Trustees filed the Petition in this case, seeking enforcement of the Award. (*See* Pet.) On August 9, 2023, Dame was served with the summons in this action as well as the Petition and the Memorandum of Law in support of the Petition. (Summons Returned Executed, ECF No. 8; *see also* Affs. Service, ECF Nos. 9–10.) On September 21, 2023, the

Trustees obtained the Clerk of Court's Certificate of Default noting Dame's failure to appear in this action. (ECF No. 12.)

On November 21, 2023, the Trustees filed their Motion for Default Judgment and supporting documents. (ECF Nos. 13–16.) In the Motion, the Trustees request that the Court affirm the Award and enter judgment for the Trustees for: (1) $44,419.26, the outstanding balance of the Award; (2) $757.62 in costs arising out of the proceeding to confirm the Award; (3) $2,919 in attorney's fees incurred in this proceeding; (4) interest at a rate of ten percent on the $950 in attorney's fees included in the Award from the date of the Award (May 10, 2023) through the date of any judgment in this case, as provided in the Award; and (5) post-judgment interest at the statutory rate. (Mot. Mem. at 1.)

On May 20, 2024, this Court ordered the Trustees to clarify whether the term "Funds" as used in the Award includes both the ERISA Funds and the Labor Management Fund, and to address the date(s) on which Dame made any partial payment toward the Award. (Elec. Order, May 20, 2024.) That same day, the Trustees filed a letter response, attaching a supplemental declaration by the Trustees' contributions manager, Tompuri, in support of the Motion for Default. (ECF No. 20; Tompuri Supp. Decl.) In the letter response, the Trustees acknowledge that the outstanding balance of the Arbitration Award is no longer $44,419.26, as the Trustees' alleged in the Petition and Motion for Default Judgment, given that Dame has now paid a total of $38,951.82 toward the Award. (*See* ECF No. 20.)

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185 and 1132(e)(1).

Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds and the Labor Management Fund are administered in this district and because Defendant maintains its principal office and last known address in this district. (*See* Tompuri Decl. ¶¶ 3–5.)

**LEGAL STANDARD**

The Second Circuit has instructed district courts to treat an unanswered petition to confirm an arbitration award and the accompanying record "as akin to a motion for summary judgment," instead of ruling on a motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). While Rule 55 governs a civil case where a defendant has defaulted, this rule "does not operate well in the context of a motion to confirm . . . an arbitration award" because such a petition is a "motion[] in an ongoing proceeding rather than a complaint initiating a plenary action." *Id.* at 107–08. A petition "to confirm . . . an arbitration award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself[,] . . . rather than only the allegations of one party found in the complaints" and thus "the judgment the court enters should be based on the record." *Id.* at 109. Accordingly, the Court construes the Petition, the Memorandum of Law in Support of the Petition, and Petitioners' Motion for Default Judgment and accompanying submissions as an unopposed motion for summary judgment. *Id.*; *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M & RR Constr. Corp.*, No. 22CIV6467VSBSLC, 2022 WL 20652775, at *4 (S.D.N.Y. Nov. 17, 2022), *report and recommendation adopted*, No. 22CV6467VSBSLC, 2023 WL 5957120 (S.D.N.Y. Sept. 13, 2023) (collecting cases).

A court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a summary judgment motion is unopposed, the Court must "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair*, 462 F.3d at 110 (quotations omitted). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Finkel v. Firequench, Inc.*, No. 23-CV-4868, 2024 WL 320870, at *4 (E.D.N.Y. Jan. 29, 2024) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014)). The Court "may rely on other evidence in the record even if uncited." *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

## DISCUSSION

### I. Review of Arbitration Award

"[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016) ("*Nat'l Football League*"). A court must confirm the award so long as the arbitrator was "acting within the scope of his authority as defined by the collective bargaining agreement" and was "even arguably construing or applying the contract," rather than "ignor[ing]" its "plain language." *Id.* at 537 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Where the arbitration award "'draws its essence from the collective bargaining agreement' and is not merely the arbitrator's 'own brand of industrial justice,' it must be confirmed." *Id.* (citing *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir.

1998). An award should be confirmed so long as "a ground for the arbitrator's decision can be inferred from the facts of the case," even if there is "[o]nly a barely colorable justification" for the decision. *D.H. Blair*, 462 F.3d at 110 (quotation marks omitted).[1]

       The Trustees here have met their burden of demonstrating both that there is no issue of material fact as to the Award's validity and that the Award is valid and enforceable. The Trustees submitted evidence that Dame, as a member of the Carpentry Association, was a party to the CBA and was accordingly bound by its requirements during the period from November 6, 2022 through February 12, 2023. (*See* Tompuri Decl. ¶ 15; CBA at 2; Member List; Banfield Decl. ¶¶ 3, 5.) The Trustees further submitted evidence that Dame had an obligation under the CBA to make certain contributions to the Funds and to comply with the Trustees' additional policies regarding those contributions. (*See* Banfield Decl. ¶¶ 5–6; CBA art. 16; Tompuri Supp. Decl. ¶ 5.) The Trustees submitted evidence that Dame failed to remit specific fringe benefit contributions to the Funds under the timeframe required by the CBA for the pay periods of November 6, 2022 through February 12, 2023. (*See* Pet'rs' Feb. 27, 2023 Notice Letter, ECF No. 15-2 (enclosing the fringe benefits contributions Dame had made for each employee and the contributions owed); *see also* Pet. ¶ 25; Tompuri Supp. Decl. ¶ 5.) Further, the Trustees submitted the Trustees' Collection Policy which provides that where an employer fails to pay the

---

[1] A court may, however, vacate an arbitration award under 9 U.S.C. § 10 where: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior . . ."; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. There is no indication in the record that any of these exceptions apply.

required contributions to the Funds, the Collection Policy requires that the matter be sent to arbitration before an arbitrator designated by the Funds, unless counsel for the delinquent employer files suit in federal court. (Collection Policy art. II, § 2.3; *see also* Tompuri Decl. ¶¶ 1, 12.)

Considering the Trustees' evidence, the Court must confirm the Award. First, the Trustees have shown that in issuing the Award, the Arbitrator "acted within the scope of his authority as defined by the collective bargaining agreement." *Nat'l Football League*, 820 F.3d at 536. The Trustees' Collection Policy provides that disputes over an employer's failure to pay contributions to the Funds shall be sent to arbitration (Collection Policy art. II, § 2.3), and that employers bound by the CBA are required to comply with the Collection Policy because the CBA bound employers to "comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds." (CBA art. 16(a)).

Moreover, in finding that Dame had an obligation under the CBA to make contributions to the Funds and that it was delinquent in making those required payments, the Award "draws its essence" from the CBA. *Nat'l Football League*, 820 F.3d at 537 (citing *Niagara Mowhawk*, 143 F.3d at 714). The CBA explicitly sets forth requirements concerning employers' contributions to fridge benefit funds (*see* CBA art. 16) and incorporates the Collection Policy, which provides that employers delinquent in their contributions to the Funds shall be liable for the contributions, interest, liquidated damages, and costs incurred in collected those contributions, including arbitration fees. (Collection Policy art. II, §§ 2.1(A), (D); *id.* art. VI, § 6.1.) The Arbitrator's interpretation of Dame's obligations under the CBA is "a great deal more than barely colorable, which, again, is all that the law requires." *Trs. for Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. Ideal Interiors, Inc.*, No. 23 CIV.

5110 (KPF), 2023 WL 7005229, at *4 (S.D.N.Y. Oct. 24, 2023) (citing *Nat'l Football League*, 820 F.3d at 539) (quotation marks omitted).

Accordingly, the Trustees' Petition to confirm the Arbitration Award is granted. Judgment shall enter for the Trustees in the amount of $13,919.25, which constitutes the outstanding balance of the Award.[2] Further, because the Arbitrator awarded the Trustees interest at the rate of ten percent on the $950 in attorney's fees included in the Award from the date of the Award (*see* Award at 2), Dame shall pay interest at the rate of ten percent on the $950 award of attorney's fees from May 10, 2023 until the date judgment enters in this matter.

## II.   Attorney's Fees and Costs Incurred in Confirming the Award

### A.   Attorney's Fees

The Trustees seek an award of $2,919 in attorney's fees incurred by bringing this action to enforce the Award. (Mot. Mem. at 1.) "Generally, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 819 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (quotation marks omitted). Courts retain "inherent equitable powers," however, to "award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). The Second Circuit has recognized that in "suits for the confirmation and enforcement of arbitration awards," a court may exercise this inherent equitable power and "properly award[]" attorney's fees and costs in the absence of

---

[2] The Arbitrator found Dame liable for $52,871.07, and to date, Dame has paid a total of $38,951.82 toward the Award. (Tompuri Supp. Decl. ¶¶ 6–7; Award at 2.)

statutory authority "when a challenger refuses to abide by an arbitrator's decision without justification." *Id.* at 819–20 (quotation marks omitted).

The LMRA does not authorize the award of attorney's fees and costs in actions to confirm and enforce and arbitrator's award for delinquent contributions pursuant to a collective bargaining agreement. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 465 (S.D.N.Y. 2022) ("*Architectural Metal Concept*") ("Section 301 of the LMRA does not provide for recovery of attorneys' fees.") (citing *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). Courts in this District are divided on whether the ERISA requires the award of attorney's fees in an action to confirm an arbitration award. *E.g.*, *compare Trs. of Empire State Carpenters Annuity v. Fourmen Constr., Inc.*, No. 15CV3252JFBARL, 2016 WL 146245, at *3 (E.D.N.Y. Jan. 13, 2016) ("*Fourmen Constr.*") ("Although Section 502(g) of the [ERISA] [29 U.S.C. § 1132(g)(2)(D)] requires the award of attorneys' fees . . . in an action to recover delinquent contributions pursuant to a [CBA], this does not necessarily mean that a successful party is also entitled to its costs and attorney's fees in bringing a petition to confirm an arbitration award.") (citations omitted) *with Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Upstate Interiors, LLC*, No. 19-CV-326 (MKB), 2021 WL 2576938, at *4 (E.D.N.Y. June 23, 2021) (interpreting 29 U.S.C. § 1132(g)(2)(D) as requiring courts to award attorney's fees and costs in action to confirm arbitration award in favor of the ERISA plan).

The Court need not decide, however, whether the ERISA requires attorney's fees here and whether Dame has refused to abide by the Arbitrator's decision without justification because Dame is contractually obligated under the CBA and the Funds' Collection Policy to pay

attorney's fees incurred in recovering delinquent contributions to the Funds. *See Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. CEI Contractors, Inc.*, No. 18-CV-3467 JFB-GRB, 2019 WL 117603, at *4 (E.D.N.Y. Jan. 7, 2019) (finding that party seeking to enforce an arbitration award for delinquent contributions was entitled to attorney's fees and costs pursuant to the CBA and Collection Policy governing the employers' required contributions); *see also Fourmen Constr.*, 2016 WL 146245, at *3 ("The parties' agreements [contained within a CBA] are a sufficient basis upon which to award attorneys' fees and costs" in an action to enforce an arbitration award).

The Collection Policy in this case requires that an employer delinquent in its contributions to the Funds pay attorney's fees "at the hourly rate charged to the Fund for all time spent by Counsel in" collecting delinquent contributions. (Collection Policy, art. VI, § 6.2.) Dame is contractually bound to this provision because the CBA to which it is a party provides that employers "shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." (CBA art. 16(a).) Furthermore, the Collection Policy is the policy that the Trustees of the ERISA Funds have established to govern the collection of all employer contributions. (*See* Collection Policy; Tompuri Decl ¶ 10.) Accordingly, the Trustees are entitled to reasonable attorney's fees and costs incurred in bringing this Petition under the provisions of the CBA and the Collection Policy.

### B.  Attorney's Fees Calculation

To assess whether requested attorney's fees are "reasonable," the court must "calculate a presumptively reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables." *Lilly v. City of New York*,

934 F.3d 222, 229–30 (2d Cir. 2019).[3] To determine a reasonable hourly rate, the court must

determine "the rate a paying client would be willing to pay[,] bearing in mind that a reasonable,

paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 231

(citation omitted). In determining this rate, courts should "bear in mind *all* of the case-specific

variables that . . . other courts have identified as relevant to the reasonableness of attorney's fees

in setting a reasonable hourly rate." *Id.* at 232 (quotation marks omitted).) These case-specific

variables include, among other factors, twelve so-called *Johnson* factors identified first by the

Fifth Circuit, which relate to the nature of the legal services provided, the circumstances of the

attorney, and comparisons to similar cases. *Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. Cnty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (citing *Johnson v. Ga. Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489

U.S. 87, 92–93 (1989)).[4] In what has become known as the "forum rule," courts in this Circuit

---

[3] In *Arbor Hill*, the Second Circuit reviewed the history of its method of calculating the
reasonable attorney fee and "abandon[ed]" the long-used term "lodestar" in the analysis of
attorney's fees in favor of an approach considering several factors that boils down to "what a
reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood*
*Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008); *see also Lilly*, 934 F.3d at 230 n.33
("We used the term 'presumptively reasonable fee' instead of the traditional term 'lodestar'
because the meaning of the latter term 'has shifted over time, and its value as a metaphor has
deteriorated to the point of unhelpfulness' . . . [but] [f]or all intents and purposes, the two terms
mean the same thing." (citing *Arbor Hill* at 190)).

[4] The twelve *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
the level of skill required to perform the legal service properly; (4) the preclusion
of employment by the attorney due to acceptance of the case; (5) the attorney's
customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
limitations imposed by the client or the circumstances; (8) the amount involved in
the case and the results obtained; (9) the experience, reputation, and ability of the

calculate the reasonable presumptive fee "based on the prevailing rates in the forum in which the litigation was brought." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024); *see also Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011). The party seeking attorney's fees "bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Responsive to Our Cmty., Inc.*, No. CV2200685GRBAYS, 2023 WL 8719925, at *5 (E.D.N.Y. Feb. 26, 2023); *N.Y. State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

The Trustees have requested $2,919 in attorney's fees, reflecting 12.7 hours of work by two associate attorneys and two legal assistants. (Moosnick Decl. ¶¶ 18–20 & n.1; *id*. Ex. M, "Billing Records," ECF No. 16-7.) The Trustees have submitted Billing Records and an attorney declaration in support of this request. (*See* Moosnick Decl.; Billing Records.) The two attorneys who represented the Trustees in this case are Maura Moosnick and Matthew Vani. (Moosnick Decl. ¶¶ 18–19; *see also* Billing Records.) Moosnick is an associate at Virginia & Ambinder, LLP ("V&A") and a 2021 graduate of Fordham University School of Law. (Moosnick Decl. ¶ 18.) As an associate, Moosnick "regularly handle[s] arbitrations and petitions to confirm

---

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19). Additionally, in calculating the "reasonable fee," the Second Circuit has instructed district courts to "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and to "consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190.

arbitration awards, along with other matters relating to ERISA and LMRA litigation." (*Id.*) Vani is a former associate at V&A and a 2022 graduate of St. John's University School of Law. (*Id.* ¶ 19.) The hourly rate requested by each V&A associate is $275 per hour (*Id.* ¶¶ 18–19.) Two legal assistants additionally provided support to the Trustees' counsel in this action. (*Id.* at 20 & n.1; *see also* Billing Records.) Each legal assistant was billed at a rate of $120 per hour of work performed in connection with this action. (Moosnick Decl. ¶ 20.)

The 12.7 hours that the Trustees' counsel and legal assistants spent preparing the Petition, Motion, and supporting submissions was reasonable based on the description of tasks performed and decisions in comparable cases. *See* Billing Records; *Finkel v. J&H Elec. Contracting, Inc.*, No. 22-CV-06298 (HG), 2023 WL 4763366, at *3 (E.D.N.Y. July 26, 2023) ("*J&H Elec. Contracting*") (finding reasonable 11.3 hours spent on an unopposed petition to confirm an arbitration award); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. P&J Wood Floors, Inc.*, No. 1:22-CV-9386-GHW, 2023 WL 2186341, at *5 (S.D.N.Y. Feb. 23, 2023) ("*P&J Wood Floors*") (approving attorney's fee request for 15.6 hours of work by two attorneys and two legal assistants on an unopposed petition to confirm an arbitration award). Moreover, the delegation of work was efficient because, of the 12.7 total hours spent on the Petition, all of the work was done by associates and legal assistants, and none was done by a partner billing at a higher rate of pay. (*See* Billing Records.)

The $275 per hour rate charged by the Trustees' counsel is also reasonable. Courts in this District have recently approved rates ranging from $200–$290 per hour for associate attorneys who have five or fewer years of legal work experience—the same experience level as Trustees' counsel, Ms. Moosnick and Mr. Vani. *See, e.g., J&H Elec. Contracting*, 2023 WL 4763366, at

*3 (finding an associate rate of $290/hour "reasonable" in an unopposed petition to confirm an arbitration award, "[a]lthough . . . slightly above th[e] usual range, . . . particularly because of the extensive amount of delegation to associates in this case."); *P&J Wood Floors*, 2023 WL 2186341, at *5–6 (awarding an hourly rate of $225 per hour, reduced from $275 per hour, for Ms. Moosnick in an action to confirm an arbitration award, due to her lower level of experience); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs.*, No. 22-CV-5050-KAM-JRC, 2023 WL 5830338, at *12 (E.D.N.Y. July 31, 2023) ("*Cape Mount Heavy Constr.*") (recommending that Ms. Moosnick's rate be reduced from the requested $290 per hour to $200 per hour in an action to confirm an arbitration award), *report and recommendation adopted*, No. 22CV5050KAMJRC, 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023). While all of the work in this action was handled by associate attorneys and legal assistants, "[i]n other cases involving unopposed petitions to confirm an arbitration award, courts typically approve hourly rates of $300 to $400 for partners and $225 to $250 for associates." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Safeway Installation Corp.*, No. 19-cv-10173, 2023 WL 2596939, at *3 (S.D.N.Y. Mar. 22, 2023). Although the $275 per hour rate charged by Ms. Moosnick and Mr. Vani is slightly above the usual range of $225 to $250 for associate attorneys, this rate is reasonable considering that the legal work in this case was entirely handled by associates rather than higher billing partners and in light of the legal team's subject matter experience and experience level and previous awards in similar cases. *See J&H Elec. Contracting*, 2023 WL 4763366, at *3.[5]

---

[5] As another judge on this Court has observed: "Reducing the associates' hourly rate when awarding attorney's fees for this specific case would risk creating a perverse incentive for future cases, in which Petitioner's counsel might have partners perform more work that associates otherwise would have performed, in order to increase the total amount of fees that Petitioner's counsel could collect." *J&H Elec. Contracting*, 2023 WL 4763366, at *3.

The Court finds, however, that the requested $120 per hour rate for legal assistants in this case is unreasonably high. Courts in this District have approved attorney's fee awards for work performed by legal assistants at rates between $90 and $120 per hour. *See Finkel v. Thorn Elec., Inc.*, No. 22CV0093EKTAM, 2022 WL 18135310, at *6 (E.D.N.Y. Dec. 2, 2022) ("*Thorn Elec.*"), *report and recommendation adopted*, No. 22-CV-93(EK)(TAM), 2023 WL 112802 (E.D.N.Y. Jan. 5, 2023) (approving rate of $120 per hour for paralegals); *but see Cape Mount Heavy Constr.*, No. 22-CV-5050-KAM-JRC, 2023 WL 5830338, at *12 ("this Court considers the requested hourly rate of $115 per hour for legal assistants unreasonably high" and recommends reducing the rate to $100 per hour); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Goal Enterprises, Inc.*, No. 20CV1958KAMRER, 2022 WL 17820088, at *8 (E.D.N.Y. July 6, 2022) (recommending in a "relatively straightforward ERISA case" that "the rate for legal assistants be reduced to $90 per hour"), *report and recommendation adopted by* Elec. Order, No. 20-CV-1958 KAM-RER (E.D.N.Y Aug. 5, 2022). Considering all the circumstances in the case and awards in similar cases, the Court finds that billing rate of $110 per hour for work performed by the legal assistants is reasonable.

Accordingly, the Court awards the Trustees a total of $2,882 in attorney's fees for the 9 hours billed by associate attorneys and the 3.7 hours billed by legal assistants. (*See* Billing Records).

### C.  Costs

The Trustees request $757.62 in costs arising out of this action, including the filing fee, service fees, and postage for pleadings. (Mot. Mem. at 1; ECF No. 16-7 at 4.) ERISA authorizes successful plaintiffs to recover reasonable costs from defendants. 29 U.S.C. § 1132(g)(2)(D). Further, the Trustees are entitled to costs arising out of this action to enforce the Award in this

case pursuant to the CBA and Collection Policy (CBA art. 16(b); Collection Policy art. II,

§§ 2.1(A), (D); *id.* art. VI, § 6.1), and pursuant to the Award, which ordered Dame to pay "all

court costs including, but not limited to, the filing fee of $400.00" in the event that Dame failed

to pay the Award and the Trustees sought to enforce the Award in federal court. (Award ¶ 9.)

The costs requested by the Trustees are reasonable and adequately documented. *See Thorn Elec.*,

2023 WL 112802, at *1 (approving costs in the amount of $652 in an action to confirm an

arbitration award). Accordingly, the Court will award the Trustees $757.62 in costs.

### III.    Post-Judgment Interest

The Trustees also seek post-judgment interest accruing from the date of judgment until

Dame pays the judgment in full pursuant to 28 U.S.C. § 1961. (Mot. Mem. at 13.) Under

28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory." *Cappiello v. ICD*

*Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (quotation marks omitted). This mandate applies

in actions to confirm arbitration awards. *Architectural Metal Concept LLC*, 636 F. Supp. 3d at

465; *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). The successful

party is entitled to post-judgment interest "from the date of the entry of judgment, at a rate equal

to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of the

judgment." 28 U.S.C. § 1961(a). Accordingly, the Court grants the Trustees' request for post-

judgment interest, and such interest shall accrue at the statutory rate under 28 U.S.C. § 1961(a)

from the date judgment is entered until payment is made in full.

### CONCLUSION

For the reasons set forth above, the Court treats the Petition and Motion for Default

Judgment together as an unopposed motion for summary judgment, grants the motion, and

confirms the Arbitration Award of May 10, 2023. Petitioners are awarded judgment in the amount of: (1) $13,919.25, the sum of the Arbitration Award less the partial contribution Dame has paid; (2) ten percent interest on the Arbitration Award of attorney's fees in the amount of $950.00, from May 10, 2023 until the date judgment enters in this matter; (3) $2,882 for attorney's fees incurred in this action; (4) $757.62 for costs arising from this action; and (4) post-judgment interest at the rate set forth in 28 U.S.C. § 1961. The Clerk of Court shall enter judgment accordingly and close this case.

Dated: Central Islip, New York

May 21, 2024

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge
